## Alfred B. Safford *et al.*

### *v.*

## The People of the State of Illinois.

1. Injunction by State court—*receiver appointed by Federal court.* Where an injunction is granted by a State court, and served on a railway company, restraining it and its servants from obstructing a public avenue in a city with its trains, etc., the same will be binding upon a receiver of the company subsequently appointed by the United States court, and such receiver, the same as a subsequent purchaser, will be punishable for contempt for disobeying the mandate of the writ.

2. Same—*punishment after removal from office.* If the receivers of a corporation disobey an injunction against the corporation, made before their appointment, the fact that they have been removed at the time they are tried for a contempt, affords no defense whatever.

3. Same—*as to receiver not actively participating.* Where a railway company passes into the hands of receivers after it and its servants and agents are enjoined from obstructing a certain avenue, etc., with its cars, and in managing its business the injunction is disobeyed, one of the receivers can not be exonerated because he took no active part in the matters complained of. It is his duty to see that the injunction is obeyed.

4. Receiver—*of railroad company as its agent.* A receiver of a railway company appointed by the court to manage its business, is legally the agent of the company, although under the direction of the court appointing him.

5. Same—*powers.* The court, in appointing a receiver for a corporation, has no power to enlarge or restrict the corporate powers and duties conferred on the corporation by its charter. The receiver is bound by the charter to the same extent as the directory. If the company is under a legal duty to perform or not to do a certain act, the same will devolve upon its receiver.

Writ of Error to the Circuit Court of Alexander county; the Hon. David J. Baker, Judge, presiding.

Mr. Samuel P. Wheeler, for the plaintiffs in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, that on the 6th day of March, 1873, a bill was filed praying an injunction against the Cairo and Vincennes Railroad Company, to restrain it, its agents, employees and attorneys from the further use of Commercial avenue, in the city of Cairo, for loading and unloading cars, from leaving them standing thereon, or making up trains, and from using railroad tracks for switching cars or trains thereon, or for any purpose other than for transit of cars and trains over their tracks, except the company might use their tracks south of and below Sixth street for making up trains and switching, and of using their tracks below Fifth street, except at street crossings, for storing, loading and unloading cars, and of using their tracks between Seventh and Eighth streets, and between Eighth and Ninth streets, for standing passenger trains for such time as might be necessary on the arrival and departure of trains. A writ was, on that day, granted, according to the prayer, restraining them until the further order of the court. The writ was served on an agent of the company on the next day.

On the fifth day of March, 1874, plaintiffs in error were appointed receivers of the road by the United States Circuit Court for the Southern District of Illinois, and entered upon the discharge of their duty as such. They, in disregard of the injunction, caused to be switched, daily, upon the side track large numbers of cars to be loaded and unloaded, and allowed cars to be left standing on the side track in the portion of the avenue in respect of which the company had been restrained.

It is, however, set up as a defense, that they were not the agents or servants of the railroad company, but, being appointed receivers by the Federal court, they were its agents, and not amenable to nor were they restrained by the injunction of the State court, and if they were, by force of the writ, it was, in effect, annulled by a decree of the Federal court, authorizing them to perform the several acts which are charged as violations of the injunction.

The railroad company was under restraint, by an order of a

court of competent jurisdiction, at the time plaintiffs in error were appointed receivers, and no question can be, with any pretense of legal principle for its support, urged against the binding force of the injunction. According to every principle of the law, it was binding upon all persons to whom it was directed, and in the very necessities of the case its scope and operation must be broader than is claimed by plaintiffs in error. The order and writ are matters of public record, of which all persons are bound to take notice, at their peril. If the court were to enjoin a person from doing a specified act, in reference to a piece of property of which he was the owner, and he were to sell it pending the injunction, can it be possible that the authority of the law, as spoken by its appropriate tribunals, could be defied and successfully resisted by the purchaser doing the very act the law had prohibited his vendor from performing? Most assuredly not.

Suppose, in this case, the road, property and franchises of the company had been sold, would that have revoked and annulled the restraining order of the court, and permitted the purchaser to have proceeded to the performance of the prohibited act? Most unquestionably not. The authority of the law can not be so easily evaded and thwarted. It surely has some vigor, and its decrees must have some force. To hold otherwise would be to render the courts impotent, and their power only effective so far as litigants might choose to acquiesce. In the cases supposed, besides a large number of others that might be cited, the purchaser would take the right precisely as it was held by the seller. If he were under restraint as to its use, the vendee would be under the same restraint.

In this case the injunction was against the corporation as a legal entity, and its agents, servants, etc. When the receivers were appointed by the Federal court, there was no change in the corporate body. Its existence was intact, with its legal functions unimpaired, but simply its acts were performed by agents appointed by the court, and not by the corporation. The agents appointed by the court to perform its duties and exercise its functions, are legally its agents, although they are

under the direction of the court appointing them, within the limits of its charter. The court only authorizes the receiver to exercise the privileges and perform the duties prescribed by the charter. The court does not, nor could it if attempted, enlarge or restrict the powers and duties conferred by the charter. When it appoints the receiver, the court assumes the management of the corporation under and in accordance with the charter, and is bound by its provisions to the same extent that are the directory, and the agents appointed by the court are required by it to act within the limits of the charter, and to perform all duties imposed thereby.

When the court thus seized the control and management of the road, the company was not thereby released from any debt, legal liability incurred or the performance of any duty imposed. In this case, this company was under the duty to obey the injunction, and the Federal court did not nor could it legally dissolve the injunction rightfully granted by the State court. The decree appointing the receivers does not, in the least, pretend to do such an act. The petition for their appointment does not ask for it, nor does the decree in any, the remotest, manner refer to or purport to, in anywise, dissolve, modify or affect the injunction, and the law did not operate to interfere with its operation in any degree. The receivers were, then, bound to observe and obey the injunction whilst in force, precisely as though they had been appointed and were acting under the directory of the company. The decree of the Federal court neither required nor authorized them to act differently.

It appears that plaintiffs in error and two of their employees, being attached for contempt of court in disregarding the injunction, applied to the Federal court to annul the injunction, and to have the attorney causing their arrest attached for contempt of that court, and for leave to lay additional track in a portion of the avenue. Of course, the prayer to annul the order granting the injunction by the State court, and the attachment of the attorney, was not, as it could not be, granted. But the court authorized the laying of the side track, as asked, for the purpose of passing of trains, and "for standing of

cars thereon, above Twentieth street, in such manner as not to unnecessarily interfere with the public right thereon, or obstruct street crossings, and only such reasonable length of time as may be required for loading and unloading such cars." Now, here was only permission to stand cars above Twentieth street, and yet these plaintiffs in error, in violation of the injunction of the State court, and in utter disregard and contempt of the order of the Federal court, permitted cars to stand on the avenue, and to be loaded and unloaded, below Twentieth street. They thus seem to have been actuated by a disregard for all authority, both Federal and State, in their management of the road in the city. When they have so acted, it is strange that we shall be asked to indorse and sanction their acts.

We do not perceive the slightest excuse for their conduct. They first defy the injunction of the State court, and when they are about to be compelled to submit to its power and authority, they, to carry out their purposes, appeal to the Federal court to abrogate the order of the State court, and punish its officers for attempting to enforce its decree, and to obtain permission to proceed in acts violative of the injunction, and, failing in that, by only obtaining leave to stand, load and unload cars above Twentieth street, they persistently continued in their purpose, and did stand and load and unload cars below that point, and then ask this court to say that such defiance of authority is legal, justifiable, and not a contempt of the authority of the State.

Nor is it any, the slightest, excuse, to say they did not know the force and effect of the injunction. They, by their petition to the Federal court, set out, in terms, the order of the judge granting the injunction, and can not be heard to say they did not understand its force, as the language was plain, simple and easily understood by the most ordinary intellect. But, had it not been easily comprehended, it was their duty to learn its import. They do not say, in their petition to the Federal court, that they can not understand its import, but they ask that it be held to be void. Even if they had not seen the writ,

knowing that it had been issued, it was their duty to see and learn its import.

Nor is Safford exonerated from responsibility because he, by arrangement with Morrill, took no active part in the running arrangements of the road. He was equally bound for Morill's acts, and, knowing of the injunction, and the limitation of their powers by the order of the Federal court, on his own petition, he was bound to use efforts to prevent disobedience to the orders by Morrill or their employees. He could not escape liability by merely remaining inactive. He was bound to act to prevent disobedience to these orders, and can not shield himself by saying others did the act which he might have prevented.

Nor is it any defense to say, if they did defy the authority of the State, acting through its properly constituted authorities, they have been removed from the receivership, and their contempt was thereby purged. As well say, an officer committing a criminal official act can not be punished because he has been removed from office or his term has expired.

An examination of the entire record presented to us in this case discloses no ground for a reversal, and the judgment of the court below must be affirmed.

*Judgment affirmed.*